STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony Woods, Defendant-Appellant.

Court of Appeals

*No. 91–3060-CR. Submitted on briefs September 2, 1992.—Decided December 8, 1992*

(Also reported in — N.W.2d —.)

130

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael Yovovich* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Gregory M. Posner-Weber,* assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SCHUDSON, J.   This appeal presents three issues: 1) whether an adult sentence can be consecutive to a juvenile court disposition; 2) whether, if such a consecutive sentence is not lawful, a plea agreement that includes a recommendation for that sentence invalidates a guilty plea; and 3) whether renegotiation of a sentencing recommendation without a defendant's knowledge invalidates a guilty plea. We conclude that an adult court sentence cannot be consecutive to a juvenile court disposition. We also conclude that because the defendant pled guilty as part of a plea agreement that included a recommendation for such a consecutive sentence, and because

the defendant's attorney renegotiated the State's sentencing recommendation without Woods' knowledge or consent, Woods' guilty plea must be withdrawn.

## I. BACKGROUND

On July 17, 1990, sixteen year-old Anthony Woods allegedly walked up to a car, grabbed the driver by her hair, placed a gun to her head, pulled her out of the car, took the car and drove off. The juvenile court waived its jurisdiction over Woods on this offense, for which he was charged with armed robbery in the adult court.

At approximately the same time, however, the juvenile court also committed Woods to the Ethan Allen juvenile corrections facility for eighteen months as a result of two earlier offenses. Consequently, when Woods pled guilty to the armed robbery in adult court on November 12, 1990, and when he was sentenced on January 18, 1991, he was already incarcerated at Ethan Allen under a valid juvenile court dispositional order that was not to expire until February 24, 1992.

According to a plea agreement, Woods would plead guilty to armed robbery in exchange for the State's recommendation that Woods receive a two-year sentence that would run consecutive to his juvenile disposition. At the plea hearing, the trial court asked Woods if he understood that the court could send him "to jail for twenty years on this offense and run that consecutive to what you are now doing at . . . [Ethan Allen]." Woods responded that he understood. The court accepted Woods' guilty plea and ordered a pre-sentence investigation report.

At the sentencing, the prosecutor recommended "a period of *two to three years consecutive* to the term [Woods was] serving in Wales." (Emphasis added.) The defense argued for a consecutive period of probation.

Neither Woods nor his attorney objected to either the recommendation for a consecutive sentence or to the alteration from "two years" to "two to three years." The court imposed a ten-year prison sentence, consecutive to the juvenile disposition.

Woods filed a motion for post-conviction relief, alleging ineffective assistance of counsel based on his attorney's failure to object to the State's modification of the original plea agreement. Woods later amended his motion, asserting that the plea agreement "should be voided as illegal and illusory" because "[d]efense counsel and [the State] agreed to an illegal sentence recommendation." Woods argued that sec. 973.15(2), Stats., did not permit a court to impose a criminal sentence consecutive to a commitment to a juvenile correctional facility. Woods also argued that his attorney "renegotiated the plea bargain with [the State] from a two-year recommendation to a two to three year recommendation" without informing or consulting with him. Woods requested resentencing before a different judge or, in the alternative, that the judgment be vacated due to "an invalid plea." At the postconviction motion hearing, the parties entered into a stipulation, summarizing why the State's sentencing recommendation departed from the original agreement. The prosecutor explained:

> It would be stipulated between counsel that on the date of January 18th of 1991, there was a sentencing in this court, that I had come into this court and I had a conversation with Mr. Woods' [defense counsel].
>
> [Defense counsel] indicated to me, asking me if I thought that your honor would go along with the recommendation in the presentence and my recommendation which was two years[.] I indicated to [defense counsel] that I did not know if the court

would because the presentence, in my opinion, and apparently [defense counsel]'s opinion, was rather negative as to Mr. Woods.

[Defense counsel] then suggested that I recommend a period of two to three years hoping that that would be more appeal[ing to] the court and the court would accept a recommendation in that area.

I indicated to [defense counsel] that I would make that recommendation, and he indicated that that would be okay with him.

The recommendation was then made in open court. [Defense counsel] didn't object to it and the Court sentenced Mr. Woods to ten years.

It would be [defense counsel]'s testimony, based on my conversation with him[,] . . . that he would testify that on January 18th, 1991, that he and I had a conversation in the hallway pertaining to Mr. Woods' presentence and the State's recommendation. That [defense counsel] indicated to me that he had some worry about whether the Court would go along with my recommendation as to what would happen to Mr. Woods in sentencing; that is, my two year recommendation. That [defense counsel] then suggested that we make the recommendation two or three years hoping that the Court would follow that recommendation and hoping it would be more acceptable 'to the Court based on the negative presentence as [defense counsel] also perceived it.

It would be [defense counsel]'s testimony that the case was called and he did not have the conversation with Mr. Woods about the modification of the recommendation and that the Court then sentenced Mr. Woods to ten years.

[Defense counsel] also would indicate obviously that he would not object to the State's recommendation and it's also my understanding that Mr. Woods would testify that [defense counsel] never came to

him telling him that the State would recommend two to three years.

The court accepted the stipulation and ordered the issues briefed. In its brief to the trial court, the State argued that any breach of the plea agreement was "slight" and that, under *State v. Smith*, 153 Wis. 2d 739, 451 N.W.2d 794 (Ct. App. 1989), Woods had waived any breach by failing to object at sentencing. The State also argued that the performance of Woods' attorney was not constitutionally ineffective. The trial court, in its December 6, 1991, order, "adopt[ed] the reasoning outlined in the State's brief on all issues" and denied Woods' motion. Woods now appeals.

## II. THE STANDARD OF REVIEW

This case involves determination of a court's statutory authority to impose a consecutive sentence, a determination presenting a question of law that we decide without deference to the trial court. *State v. Moore*, 167 Wis. 2d 491, 495–496, 481 N.W.2d 633, 635 (1992). Further, we must interpret statutes according to their plain meaning and, absent any ambiguity, we must follow their plain meaning. *State v. Livingston*, 159 Wis. 2d 561, 573, 464 N.W.2d 839, 844 (1991).

This case also involves a defendant's request to withdraw a guilty plea after sentencing, a request that must be granted if a defendant successfully "carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw the plea to correct a 'manifest injustice.'" *State v. Krieger*, 163 Wis. 2d 241, 249, 471 N.W.2d 599, 602 (Ct. App. 1991). A motion to withdraw a plea addresses the trial court's discretion and, there-

136

fore, we will reverse a trial court's decision only if the trial court has abused its discretion. *Id.*, 163 Wis. 2d at 250, 471 N.W.2d at 602. An abuse of discretion will, however, be found when a trial court bases the exercise of its discretion upon an error of law. *State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968).

## III. THE CONSECUTIVE SENTENCE

Woods argues, and the State agrees, that an adult-court sentence cannot be consecutive to a juvenile court disposition. The parties are correct, as we find from the plain meaning of Sections 973.15(2), Stats., and 48.35(1)(a), Stats.

Section 973.15(2), Stats., provides that a trial court "may impose as many sentences as there are *convictions* and may provide that any such sentence be concurrent with or *consecutive to any other sentence* imposed at the same time or previously." (Emphasis added.) While the term "sentence" is not statutorily-defined, sec. 973.15 clarifies that a "sentence" may be imposed only for a "conviction," and, statutorily, the term "conviction" does *not* include adjudications of juvenile delinquency. *See* sec. 48.35(1)(a) ("A judgment in proceedings on a petition under this chapter *is not a conviction of a crime*," (emphasis added)); *see also Winburn v. State*, 32 Wis. 2d 152, 157–158, 145 N.W.2d 178, 180 (1966). Therefore, as a matter of law, an adult sentence cannot run consecutive to a juvenile disposition because a juvenile disposition is not a "sentence."[1]

---

[1] The statutorily-mandated result of our holding exposes questions that merit legislative attention.

First, on what logical basis should a trial court be denied the opportunity to provide intelligent and individualized sentencing, *including* a determination of whether the sentence should be

concurrent or consecutive to a juvenile court disposition? We know of none.

Second, on what logical basis should an adult sentence supplant a juvenile dispositional order? As presently implemented by the Division of Youth Services of the Wisconsin Department of Health and Social Services, absent some extraordinary circumstances compelling the Division to retain legal custody and/or physical placement of the defendant in a juvenile facility, a commitment order to a juvenile corrections facility will, in effect, be administratively set aside. Even when many months of a valid juvenile commitment remain, a juvenile will be transferred to the adult institution ordered by the adult sentence. While that may be appropriate in some cases, should it occur, almost automatically, in all cases? Indeed, whether a young defendant will be placed in a juvenile or adult facility may quite appropriately influence a sentencing court's evaluation of whether a sentence should be concurrent or consecutive.

If the legislature were to provide adult courts the authority to specify sentences concurrent or consecutive to juvenile dispositions, it also would need to address additional questions: 1) If the court ordered a concurrent sentence, would it be served in the juvenile or adult facility? 2) Would the answer vary according to whether the juvenile had qualified for "aftercare" (juvenile parole)? 3) If the court ordered a consecutive sentence, would that result in a dangerous, non-custodial period of possible "escape" during which a juvenile completed "aftercare," before the adult sentence commenced?

We pose these questions because trial courts may be presented with situations like these with ever-increasing frequency. In the past ten years, juvenile arrests have accounted for more than 27 percent of all arrests in Wisconsin. *Arrests of Juveniles in Wisconsin 1982–1991*, Wisconsin Office of Justice Assistance (1992). Further, during the same ten year period, while arrests for property offenses rarely waived to adult court increased 15 percent, arrests for violent offenses—murder, forcible rape, robbery, and aggravated assault—more frequently waived to adult court, increased 36.5 percent. *Id.* Wisconsin's

138

Although the State agrees that the trial court's sentence was in error, the State argues, nevertheless, that Woods abandoned his right to object to the sentence " 'by persisting in a plea strategy after the basis for the claim of error' was known." The State's assertion is contrary to the record because "the basis for the claim of error" was not known to Woods, his attorney, the prosecutor, or even the judge who all incorrectly assumed that a consecutive sentence could be ordered. *Compare State v. Smith*, 153 Wis. 2d 739, 741, 451 N.W.2d 794, 795 (Ct. App. 1989) (defendant waived appellate review of breach of plea agreement where defendant was fully aware of agreement but failed to object when basis for objection was known).

## IV. THE PLEA AGREEMENT

If the only error presented by this appeal involved the consecutive sentence, we could simply reverse and

figures may even exceed terrible, national trends that show the juvenile arrest rate for violent crimes increased approximately 27 percent between 1980 and 1990. Federal Bureau of Investigation Uniform Crime Reports for the United States 1991, Sec. V, at 279.

Informed and individualized sentencing logically includes a judicial determination of whether a sentence should be concurrent or consecutive. If that concept makes sense in sentencing adults, it is equally if not more compelling in the sentencing of juveniles waived to the adult court and sentenced while they are incarcerated in a juvenile facility. Accordingly, the legislature should consider whether the judiciary will be able to provide all juveniles waived to the adult court with intelligent, individualized sentences that, together with appropriate implementation by the Department of Health and Social Services, will assure fair and strong sentences.

remand this matter for resentencing. Here, however, we have more than that simple error because: 1) the original and renegotiated plea agreements were agreements to a legal impossibility; and 2) defense counsel renegotiated the plea agreement without informing Woods or obtaining his consent.

To determine whether the trial court abused its discretion in denying Woods' motion to withdraw his guilty plea after sentencing we must consider whether withdrawal was necessary to correct a "manifest injustice." Further, to decide that, we must determine "whether the plea of guilty was voluntarily, advisedly, intentionally and understandingly entered or whether it was, at the time of its entry, attributable to force, fraud, fear, *ignorance, inadvertence or mistake." State v. Booth*, 142 Wis. 2d 232, 238, 418 N.W.2d 20, 22 (Ct. App. 1987) (citations omitted, emphasis added); *see also State v. Reppin*, 35 Wis. 2d 377, 384, 151 N.W.2d 9, 13 (1967).

The record is clear that Woods, at least in part, made the decision to plead guilty based on inaccurate information provided to him by the lawyers and judge. The plea agreement to a legal impossibility necessarily rendered the plea an uninformed one. Furthermore, when, as here, inaccurate legal information renders a plea an uninformed one, it can also compromise the voluntariness of the plea. As the supreme court explained in *State v. Riekkoff*, 112 Wis. 2d 119, 128, 332 N.W.2d 744, 749 (1983), when a defendant pled guilty under legal misunderstanding of the appellate effect of his plea, "as a matter of law his plea was neither knowing nor voluntary." Accordingly, Woods' plea was neither knowing nor voluntary.

140

Finally, Woods' guilty plea was not knowing and voluntary because his attorney failed to inform him of the renegotiated sentence recommendation, and failed to gain Woods' agreement to that modification. Because the decision to plead guilty is a personal right of a defendant, *see Boykin v. Alabama*, 395 U.S. 238 (1969), a defendant's attorney cannot renegotiate the plea without the knowledge and consent of his or her client. Unlike the situation in *State v. Paske*, 121 Wis. 2d 471, 360 N.W.2d 695 (Ct. App. 1984), cited by the State, here we do not have a defendant who, prior to sentencing, had been "made aware of the change in the prosecutor's sentencing recommendation."[2] *See Id.*, 121 Wis. 2d at 472, 360 N.W.2d at 696.

Therefore, because Woods pled guilty based on inaccurate information from the attorneys and the judge regarding his potential sentence, and because Woods' attorney renegotiated the plea agreement without

[2] While this case has been properly resolved on the grounds of the improper sentence and the renegotiation of the sentencing agreement, we acknowledge that Woods has also raised the argument that the State allegedly committed a "material breach" of the original plea agreement. Here, however, the case does not present the usual facts under which breach of plea agreement analysis is required since the State merely acquiesced to a sentencing recommendation modification proposed by defense counsel. We note, however, that if this case presented an issue requiring analysis of whether the modification would require reversal, it is clear that the difference between "two years" and "two to three years" was "material and substantial," regardless of whether it was first proposed by prosecution or defense counsel. *See State v. Jorgensen*, 137 Wis. 2d 163, 168, 404 N.W.2d 66, 68, (Ct. App. 1987) (party seeking to vacate plea agreement based on breach of plea agreement must establish that breach was "material and substantial").

informing Woods and obtaining Woods' consent, Woods' guilty plea was neither knowing nor voluntary. Woods has thus demonstrated "manifest injustice" such that his plea cannot stand.

## V. THE REMEDY

The State argues that we should simply modify the sentencing judgment by voiding the portion of the judgment that ordered the sentence be served consecutive to the disposition, and not allow Woods to withdraw his guilty plea. Woods' appellate attorney argues that, at the very least, Woods should be resentenced and, should the parties be unable to reach a plea agreement, either party should be allowed to have the trial court vacate the guilty plea. We decline to offer such a potentially confusing set of options. Simply resentencing Woods, or even allowing him to maintain his guilty plea while renegotiating the sentence recommendation, would fail to correct the error that rendered his guilty plea infirm in the first place. The appropriate solution is to return the parties to their positions prior to any error. Assuming that the prosecution will resume, Woods now has three choices: plead guilty after negotiating another plea agreement; plead guilty in the absence of a plea agreement; or, go to trial.[3]

*By the Court.*—Judgment and order reversed and cause remanded for further proceedings.

---

[3] Because Woods is essentially returned to his position in the criminal justice system prior to the error, we need not address the ineffective assistance of counsel issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issues need be addressed).