IN the INTEREST OF GUENTHER D.M., A Person Under the Age of 18 Years:

JERRY M. and Georgianna M., Petitioners-Respondents,

v.

DENNIS L.M., Respondent-Appellant. [Case No. 95–0075]†

IN the INTEREST OF EMIL A.M., A Person Under the Age of 18 Years:

JERRY M. and Georgianna M., Petitioners-Respondents,

v.

DENNIS L.M., Respondent-Appellant. [Case No. 95–0076]†

Court of Appeals

*Nos. 95–0075, 95–0076. Oral argument September 7, 1995.—Decided November 1, 1995.*

(Also reported in 542 N.W.2d 162.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs and oral argument of *Tim Provis* of Port Washington.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Christopher L. O'Byrne*

13

and *Christopher R. Behrens* of *McManus & O'Byrne* of Port Washington. Oral argument by *Christopher L. O'Byrne*

There was a brief and oral argument by Guardian ad Litem, *Eric E. Eberhardt* of *Runkel, Ansay & Eberhardt* of Port Washington.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

ANDERSON, P.J. Dennis L.M. appeals from orders of the trial court terminating his parental rights and orders denying his motion for a new trial. We conclude that the trial court correctly excluded evidence of Dennis's postincident contact with the children and the length of his incarceration as not being applicable under § 48.415(5), STATS., and properly excluded Dennis's requested jury instruction on substantial threat. We further conclude that there are no grounds for a discretionary reversal and that the trial court considered the children's wishes in making a "best interests" determination. Accordingly, we affirm the trial court.

Jerry M., the children's grandfather, filed petitions for the termination of Dennis's parental rights to Emil A.M. (d.o.b. 6/10/83) and Guenther D.M. (d.o.b. 3/23/87). The trial court determined that the applicable ground for termination was child abuse pursuant to § 48.415(5), STATS.[1] Dennis was convicted of the first-degree intentional homicide of the children's mother, contrary to §§ 940.01(1), 939.63(1)(a)2 and 939.64(2), STATS.; two counts of confining a person without con-

---

[1] After this action was commenced, the Wisconsin legislature enacted § 48.415(8), STATS., which establishes the intentional homicide of a parent as grounds for termination of parental rights. Subsection (8) became effective April 23, 1994. This potential issue was not raised by the parties on appeal.

sent, contrary to §§ 940.305 and 939.63(1)(a)2, STATS.; and two counts of false imprisonment, contrary to §§ 940.30 and 939.63(1)(a)4, STATS.

When Emil was three or four years old, he lived with his parents in New Mexico. During this time, Dennis exposed Emil to his use of cocaine on one occasion. Sometime after the family moved back to Wisconsin, Emil, Guenther and their mother moved to a shelter for battered families. Emil testified that they moved to the shelter because Dennis was "hitting us and that he was drinking so much."[2] Eventually, they moved to an apartment. One evening, Dennis went to the apartment armed with a gun and took the family prisoner. The next day, Dennis released the children. As the children were leaving the apartment, Emil testified that Dennis was pointing a gun at his mother. As he was waiting in his grandfather's car, he heard a gunshot and knew that his mother had been shot.

Prior to the fact-finding hearing, Dennis brought motions regarding the conduct of the proceeding. During the hearing on these motions, the court ruled that evidence of Dennis's pattern of behavior towards the children after the murder would not be relevant. The fact-finding hearing was held before a jury. The jury found that the evidence demonstrated child abuse as grounds for terminating Dennis's parental rights. At

---

[2] Emil testified that while in Wisconsin he witnessed Dennis's drinking:

Q. Do you know how often you would see him drinking?
A. Usually every weekend. That's the times that I would see him at home. But every day he would go down to the bar and have some beer. . . . .
Q. Do you know, when he would go out to the bars, when he would get home?
A. A lot of times real late.

15

the dispositional hearing, the court found that it was in the boys' best interests to terminate Dennis's parental rights. Dennis appeals.

Dennis raises several issues on appeal. He argues that: (1) the exclusion of evidence on the issue of "substantial threat" violated his right to present evidence on his own behalf, (2) the court's refusal to give the requested jury instruction on "substantial threat" denied Dennis a fair hearing, (3) discretionary reversal is justified because the real controversy was not fully tried, and (4) the court erred in failing to consider the wishes of the children in its determination that termination was in their best interests.

## Exclusion of Evidence

Initially, Dennis argues that the court's exclusion of evidence on the issue of "substantial threat" violated his right to present evidence on his own behalf. Dennis states that the court refused to allow him to present evidence of his contact with the boys since the murder and to present a certified copy of his judgment of convictions to show the length of his sentences. Dennis contends that the court excluded relevant evidence that he would be unable to be much of a threat to his sons since he would be incarcerated for the entirety of their childhood.

We agree with Dennis that the standard of review governing this issue is de novo. While a court's decision to admit or exclude evidence is generally discretionary, *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262, 265 (Ct. App.), *cert. denied*, 113 S. Ct. 608 (1992), the juvenile court's decision was based on its interpretation of § 48.415(5), STATS. The interpretation of a statute is a question of law which this court reviews

without deference to the trial court. *K.N.K. v. Buhler*, 139 Wis. 2d 190, 199, 407 N.W.2d 281, 286 (Ct. App. 1987).

Section 48.415(5), STATS., provides in relevant part:

> CHILD ABUSE. Child abuse may be established by a showing that the parent has exhibited a pattern of abusive behavior which is a substantial threat to the health of the child who is the subject of the petition and a showing of either of the following:
>
> (a) That the parent has caused death or injury to a child or children resulting in a felony conviction.

When interpreting a statute, we first look to the plain language of the statute. *Marshall-Wisconsin Co. v. Juneau Square Corp.*, 139 Wis. 2d 112, 133, 406 N.W.2d 764, 772 (1987). If a statute is clear and unambiguous, we need not look beyond its plain language in order to ascertain its meaning. *J.A.L. v. State*, 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502 (1991). We conclude that § 48.415(5) is unambiguous for purposes of this appeal.

Dennis argues that "the 'substantial threat' element of § 48.415(5), STATS., necessarily involves assessment of present and future events so relevant evidence of the parent's present behavior must be admitted." We disagree. The statute clearly refers to behavior that has occurred in the past and was a threat to the children's welfare. Dennis's past abusive behavior[3] and his false imprisonment of the children were a

---

[3] Prior to Dennis's false imprisonment of the children, he exhibited a pattern of abusive behavior towards them. Emil testified that Dennis "used to tickle us so hard that we got to the

threat to the children. The language "substantial threat" refers back to the phrase "has exhibited a pattern." There is nothing in § 48.415(5) that would require a trial court to consider postincident contact and the length of Dennis's incarceration. We conclude that the inquiry into whether a parent "has exhibited a pattern of abusive behavior which is a substantial threat" to the health of the child ends at the time of the felony conviction.[4]

We agree with the guardian ad litem that to read the statute as Dennis asks would render child abuse virtually unprovable in any proceeding where a parent engages in a pattern of abusive behavior, has caused death or injury to a child resulting in a felony conviction, and "is involuntarily separated from the child for an extended period of time due to incarceration, and by reason of the incarceration alone is unable to be a 'present,' much less substantial, threat to the health of the child." In construing a statute, we must interpret it in such a way as to avoid an absurd or unreasonable result. *State v. Moore*, 167 Wis. 2d 491, 496, 481 N.W.2d 633, 635 (1992).

---

point of crying. And he would dig into our skin when he was tickling us. And sometimes we would start yelling stop, and he would just start laughing and keep tickling us." Dennis exposed Emil to his use of cocaine while the family resided in New Mexico. After the family moved back to Wisconsin, Emil, Guenther and their mother moved to a shelter for battered families. Emil testified that the reason for the move was that his father was "hitting us and that he was drinking so much."

[4] In his appellate brief, Dennis alludes to constitutional issues which we deem to be not fully developed. Regardless, our disposition of this appeal would not require us to reach these potential issues.

Next, Dennis argues that the court erred in refusing his requested jury instruction on "substantial threat." As long as jury instructions fully and fairly inform the jury of the law applicable to the particular case, the trial court has discretion in deciding which instructions will be given. *Farrell v. John Deere Co.*, 151 Wis. 2d 45, 60, 443 N.W.2d 50, 54 (Ct. App. 1989). If the overall meaning communicated by the instructions was a correct statement of the law, no grounds exist for reversal. *Fischer v. Ganju*, 168 Wis. 2d 834, 850, 485 N.W.2d 10, 16 (1992). Whether jury instructions are a correct statement of the law is a question of law that we review de novo. *See State v. Neumann*, 179 Wis. 2d 687, 699, 508 N.W.2d 54, 59 (Ct. App. 1993).

Dennis argues: "The court instructed at some length on the issue of psychological harm but on 'substantial threat' the instructions merely repeated the statutory language. Instructing the jurors in this manner misled them into believing the 'substantial threat' element of the statute was unimportant." The trial court rejected Dennis's proposed jury instruction which stated:

> It is the theory of Dennis [L.M.] that the pattern of abusive behavior, if any is found by the Jury, must <u>continue</u> to be a substantial threat to the health of Emil and Guenther [M.] in order for the jury to consider him an unfit parent. If [Dennis] exhibited a pattern of abuse that was a substantial threat to the health of the children in the <u>past</u>, but does not <u>presently</u> exhibit such a pattern, and is unlikely to exhibit such a pattern in the future, he cannot be found unfit.

19

We agree with the guardian ad litem that Dennis's proposed instruction is legally deficient. There is no language in § 48.415(5), STATS., that the threat must be present and continuing. Dennis's jury instruction misstates the law. To read Dennis's proposed language into § 48.415(5) would lead to absurd results which we must avoid. *See Moore*, 167 Wis. 2d at 496, 481 N.W.2d at 635.

An additional ground upon which to affirm the trial court's refusal to give the instruction is that the jury does not decide the fitness of the parent. According to § 48.424(4), STATS ., if grounds for the termination of parental rights are found by the jury, *the court* shall find the parent unfit. Here, Dennis's proposed instruction incorrectly requests the jury to determine the issue of fitness rather than focusing solely on whether grounds for termination exist. The trial court was correct in refusing to give the instruction.

### Discretionary Reversal

Dennis argues that a discretionary reversal is justified pursuant to § 752.35, STATS., because the "substantial threat" issue was never properly submitted to the jury and so the real controversy was not fully tried. Section 752.35 provides:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial

20

court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

We reject Dennis's request for a discretionary reversal. Based on our discussion of the other issues, particularly the issue of "substantial threat," we conclude that there is no evidence which would persuade us to reverse the trial court on the basis that the real controversy has not been fully tried or that justice has miscarried.

### Best Interests Determination

Dennis contends that "the trial court's 'best interests' determination was erroneous because it failed to consider the wishes of the child." The decision to terminate parental rights is within the discretion of the trial court. *Rock County Dep't of Social Servs. v. K.K.*, 162 Wis. 2d 431, 441, 469 N.W.2d 881, 885 (Ct. App. 1991). We will not overturn the trial court's decision unless there has been an erroneous exercise of discretion. *See id.* at 442, 469 N.W.2d at 885.

According to § 48.426(2), STATS., "The best interests of the child shall be the prevailing factor considered by the court in determining the disposition of all proceedings under this subchapter." Subsection (3) of § 48.426 provides:

Factors. In considering the best interests of the child under this section the court shall consider but not be limited to the following:

21

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Dennis argues that the court never observed Guenther and did not make any explicit determination of Emil's wishes.

The guardian ad litem contends that the trial court was allowed to rely upon the testimony of others at the dispositional hearing to ascertain the wishes of the children. The guardian ad litem asserts, and we agree, that it is his duty to inform the court of the children's wishes and to make recommendations to the court even if those recommendations are against the wishes of the children.[5]

---

[5] We conclude that while the court is required to consider the wishes of the children, there is no requirement that the children communicate those wishes personally at the dispositional hearing. In this case, there was ample evidence of the

 In the present case, the guardian ad litem filed a written recommendation with the trial court, informing the court that Emil wanted to be adopted by his grandparents but that the boys wanted some contact with Dennis. In the report, the guardian ad litem stated that contact between Dennis and the children would be contrary to the children's best interests. His report recommended termination of Dennis's parental rights. We conclude that the court did consider the wishes of the children, but found that it was in their best interests that Dennis's parental rights be terminated.

*By the Court.*—Orders affirmed.

wishes of the children. Dennis's sister, Mary B., and his mother, Shirley M., testified that the boys wanted contact with their father.