STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey DEMARS, Defendant-Appellant.

Court of Appeals

*No. 83–1573–CR. Submitted on briefs February 28, 1984.—
Decided April 11, 1984.*
(Also reported in 349 N.W.2d 708.)

For the defendant-appellant, the cause was submitted on the briefs of *Glenn L. Cushing,* assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *William L. Gansner,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Jeffrey Demars was convicted of one felony count and one misdemeanor count of issuance of a worthless check, pursuant to sec. 943.24, Stats. He was sentenced to two years' imprisonment on the felony count and nine months concurrently on the misdemeanor count.  Thereafter, Demars sought an order of the trial court crediting eighty-three days of presentence confinement against his sentence.  The trial court denied the request.  We affirm the order of the trial court denying credit for the period of confinement prior to the setting

of bail. However, we modify the judgment and order of the trial court to allow credit from the date of Demars' initial appearance, May 2, 1983, to the date of sentencing, May 18, 1983.[1] Credit of seventeen days against the sentences is therefore ordered.

Demars was initially jailed in another county (Fond du Lac) on February 9, 1983 on two counts of criminal damage to property allegedly committed in that county. On the same date, a probation hold was placed against Demars for absconding from probation.[2] A preliminary revocation hearing was held on March 10, 1983 resulting in a finding of probable cause for revocation of probation entered on March 11, 1983. These findings further determined that Demars should be held in custody pending a final hearing on the probation revocation matter.

On February 22, 1983, the district attorney for Winnebago county issued the criminal complaint in the case at bar. On February 25, 1983, a "detainer" was filed with Fond du Lac county by the Winnebago county sheriff's department requesting that Fond du Lac county detain Demars if he should post bond and if his probation hold should be lifted.[3] It was not until May 2, 1983 that Demars made his initial appearance in Winnebago county. At that time, the Winnebago county circuit court scheduled a preliminary examination and set a $400 cash

---

[1] Demars was in custody at all times addressed by this opinion.

[2] Demars' probation officer testified that the probation hold was occasioned by conduct unrelated to the Winnebago county charges and that the probation officer was completely unaware of the Winnebago county charges at the time the hold was placed against Demars.

[3] The record forwarded to us for purposes of this appeal is barren of the actual document or documents referred to by the parties as the "detainer." No independent document described as a "detainer" appears in the record. The briefs of the parties suggest that the "detainer" consisted of a communication asking that Demars be held and the providing of a copy of the Winnebago county complaint.

bail.[4] On May 18, 1983, Demars waived preliminary examination on the felony count, entered pleas of guilty to both Winnebago county charges, was adjudged guilty and sentenced. The trial court expressly reserved the question of appropriate credit until additional information was received. Thereafter, the trial court entered its order denying Demars' sentence credit request.

The issue is whether the presentence confinement of Demars from the date of the filing of the "detainer" (February 25, 1983) to the date of sentencing (May 18, 1983) constituted "custody in connection with the course of conduct for which sentence was imposed" within the meaning of sec. 973.155(1)(a), Stats.[5]

---

[4] Demars' custody was obtained from the Fond du Lac county authorities by virtue of a writ of habeas corpus ad testificandum. Based on the record of the initial appearance proceeding of May 2, 1983, we infer that Demars was transported from Fond du Lac county to Winnebago county, made his initial appearance and was transported back to Fond du Lac county the same day. This inference is supported by the assistant district attorney's letter of May 24, 1983 to the trial court indicating that Demars' custodial record with the Winnebago county jail reflected three hours in custody prior to his sentencing on May 18, 1983.

[5] Section 973.155(1), Stats., provides as follows:

(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

1. While the offender is awaiting trial;
2. While the offender is being tried; and
3. While the offender is awaiting imposition of sentence after trial.

(b) The categories in par. (a) include custody of the convicted offender which is in whole or in part the result of a probation or parole hold under s. 57.06(3) or 973.10(2) placed

We must initially consider the legal effect, if any, of the "detainer" presented by the Winnebago county authorities to the Fond du Lac county authorities on February 25, 1983. No formal statutory procedures presently exist in Wisconsin governing the processing of inmates or prisoners detained in one county and charged with criminal offenses in another. Former sec. 955.22, Stats. (1967), entitled "Prompt disposition of intrastate detainers" was repealed by ch. 255, Laws of 1969.[6] No substitute or equivalent legislation has since been enacted.

In construing a statute, the common and approved meaning of a word can be established by reference to a recognized dictionary. *Kollasch v. Adamany*, 104 Wis. 2d 552, 563, 313 N.W.2d 47, 53 (1981). Black's Law Dictionary[7] 347 (5th ed. 1979) defines "custody," in part, as "the detainer of a man's person by virtue of lawful process or authority." Examples of lawful process or authority resulting in custody in a criminal case include arrest with or without a warrant, arrest upon a capias or bench warrant, unsatisfied bail requirements resulting in confinement, sentence to confinement, temporary detention pursuant to sec. 968.24, Stats., probation or parole holds, and periods of confinement imposed as a condition of probation. All of the foregoing are either expressly or impliedly authorized by law.

upon the person for the same course of conduct as that resulting in the new conviction.

[6] The statute provided a procedure whereby an inmate of a state prison could request of the district attorney a prompt disposition of pending charges.

[7] Black's Law Dictionary has been recognized as one source for determining the ordinary and common meaning of a word. *See Wood County v. Board of Vocational, Technical & Adult Education*, 60 Wis. 2d 606, 614, 211 N.W.2d 617, 620–21 (1973); *State ex rel. Cortez v. Board of Fire & Police Commissioners,* 49 Wis. 2d 130, 138, 181 N.W.2d 378, 381–82 (1970).

A "detainer" is not executed against a person, nor, standing alone, can it legally authorize custody. Its function, even in those circumstances where it is statutorily recognized, is to give notice to an institution where a subject is held that his custody is desired elsewhere and, also, to give notice to the subject of the other charges so that he might demand a speedy trial.[8] The term "detainer" carries no custodial mandate in our jurisprudence.

Demars cites *People v. Face,* 276 N.W.2d 916 (Mich. App. 1979), in support of his credit claim in this case. Much of the *Face* decision, however, argues against Demars' position, and the allowance of the credit in *Face* is premised on grounds not present or asserted in this case. Although Face was charged in two separate counties during October 1976 with negotiating bad checks, it was not until she had completed her sentence on one of the charges that she was *arrested,* convicted and further sentenced on the other. The Michigan supreme court, while granting the credit request on other grounds, refused to credit the confinement time on the first sentence against the second sentence on the claim that the former sufficiently related to the course of conduct in the latter. *Id.* at 918. The court further observed, "[w]e also are not persuaded by defendant's argument that a 'hold' is equivalent to an arrest." *Id.*[9] Our reading of *Face* does not support Demars' claim in the instant case.

---

[8] *See* sec. 976.05, Stats., entitled "Agreement on detainers." Section 976.05(4) does provide for "temporary custody" of a prisoner for purposes of being made available to a receiving state to answer to a pending charge. Such "temporary custody" is not authorized by the detainer but, rather, by a "written request for temporary custody" from the non-custodial jurisdiction. The request for "temporary custody" may be disapproved by the governor of the custodial state.

[9] *Face* goes on to grant the credit request because "the effect of the action taken by the authorities in waiting to arrest defendant until after she served the Lenawee County sentence is

Demars also cites *Ex parte Spates,* 521 S.W.2d 265 (Tex. Cr. App. 1975), in support of his claim for credit. In *Spates,* a telegram was sent from the non-custodial county to the custodial county requesting that Spates be held for probation revocation proceedings. Noting that the telegram was "followed up with a formal capias," the *Spates* court concluded that the defendant was entitled to credit on the "hold." *Id.* at 266. Of significance is the triggering of custody by virtue of the legal process and authority of the capias. To the same effect are the cases of *People ex rel. Middleton v. Zelker,* 42 A.D.2d 998, 348 N.Y.S.2d 576 (N.Y. App. Div. 1973), *aff'd,* 325 N.E.2d 871 (N.Y. 1975), and *Kalamis v. Smith,* 366 N.E.2d 781 (N.Y. 1977), both cited by Demars in his brief. In *Middleton,* because a warrant was issued and filed against the defendant by the authorities of the non-custodial county in the custodial county, credit was allowed. In *Kalamis,*[10] the defendant spent simultaneous time in custody on charges from separate jurisdictions as a result of the inability to meet bail on one case and the exoneration of bail coupled with the filing of a warrant on the other. Because the defendant's custody was related to both charges, the *Kalamis* court granted the credit request.

A close analysis of all the cases cited by Demars shows the presence of a legal event, process or authority which

to impose consecutive sentences upon her." *Id.* at 918. Because of this delay, Face lost the benefit of concurrent sentencing which, under Michigan law, is required absent explicit statutory authority to the contrary. In the instant case, Demars cannot complain that the Winnebago county charges were "managed" so as to deprive him of an opportunity to argue for concurrent sentences because the Fond du Lac county charges were still pending when he was sentenced.

[10] *Kalamis* involved three cases consolidated for purposes of appeal. The reference in this decision is to the "Collins" case from *Kalamis* which is the closest of the three consolidated appeals to the facts of this case.

occasioned, at least in part, the custody of the defendant relative to the charge for which he was ultimately sentenced. We conclude that "custody" as used in sec. 973.-155, Stats., must necessarily result from the occurrence of a legal event, process, or authority which occasions, or is related to, confinement on the charge for which the defendant is ultimately sentenced.

The communication by the Winnebago county authorities to the Fond du Lac county authorities did not occasion the custody of Demars on the Winnebago county charges in any sense. Demars was not arrested based upon the communication, nor, based on the record before us, was bail set or any bail information conveyed.

Such an event occasioning custody did not occur in the instant case until Demars' custody was surrendered to the Winnebago county authorities pursuant to the writ of habeas corpus ad testificandum, followed by his initial appearance before the trial court and the setting of cash bail, all occurring on May 2, 1983. This marked the first moment when Demars' custody could legally be premised on the Winnebago county charges. Therefore, we conclude that Demars' custody from May 2, 1983 until his sentencing on May 18, 1983 related to the "course of conduct for which sentence was imposed" within the meaning of sec. 973.155, Stats.

While Demars did not object to the setting of cash bail by the trial court and indicated it was largely a moot question in light of the Fond du Lac county proceedings, we do not deem this a sufficient basis upon which to deviate from the holding recited above. Irrespective of the ability or desire to meet bail requirements, custody nonetheless attaches until such conditions are met. Section 973.155, Stats., contemplates custody without consideration as to whether the subject chooses to meet the conditions which would obtain his release or takes efforts

to that end. This not only represents, in our judgment, a correct interpretation of the statute but also presents a rule to the trial courts which is clear-cut and easy to apply. Computation of sentence credits sometimes presents complex, conflicting and confusing issues to a sentencing court. The rule recited herein, which links presentence custody of the offender with a legal event or process which triggers such custody, should serve to simplify the computation of credit process.

We affirm the order of the trial court denying presentence credit from the date of February 25, 1983 to May 2, 1983. We modify the order of the trial court to allow credit from the date of May 2, 1983 to May 18, 1983 for the reasons cited.

*By the Court.*—Judgment and order modified and as modified, affirmed.