**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 14, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2019AP1832-CR
2019AP1833-CR
STATE OF WISCONSIN**

Cir. Ct. Nos. 2018CF169
2018CF301

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

CHRISTOPHER W. YAKICH,

    DEFENDANT-APPELLANT.

---

APPEALS from orders of the circuit court for Waupaca County: VICKI L. CLUSSMAN, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

¶1 GRAHAM, J. Christopher Yakich pleaded not guilty by reason of mental disease or mental defect (NGI) to four counts that were charged in two

criminal cases.[1]  The circuit court accepted Yakich's pleas and committed him to the Wisconsin Department of Health Services pursuant to WIS. STAT. § 971.17(1) (2017-18).  Using a standard form order adopted by the Wisconsin Judicial Conference, the court issued two NGI commitment orders, one for each case, and checked a box on the forms indicating that the commitments would be "consecutive."[2]  In total, the court ordered that Yakich be committed for five years, which is longer than the maximum term of confinement in prison that could be imposed for any one of the crimes for which Yakich was committed, but well within the maximum term of confinement in prison that could be imposed on a defendant who was convicted of the same crimes and sentenced to consecutive maximum sentences.

¶2      Yakich appeals the commitment orders, arguing that the circuit court had no legal authority to impose "consecutive NGI commitments."  As explained below, we conclude that the standard form order is somewhat misleading, and that in cases involving multiple offenses, a court exercising its statutory authority does not actually impose multiple commitment periods designated as either "concurrent" or "consecutive."  We nevertheless conclude that the total

---

[1] "NGI" stands for "not guilty by reason of insanity," *State v. Stanley*, 2012 WI App 42, ¶1, 340 Wis. 2d 663, 814 N.W.2d 867, and is an affirmative defense to criminal charges, WIS. STAT. § 971.15 (2017-18).  Although the current Wisconsin statutes refer to this affirmative defense as "not guilty by reason of mental disease or mental defect," *see* WIS. STAT. § 971.17, the term "NGI" continues to be commonly used as shorthand.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The form at issue in this case is CR-271, 08/12, Order of Commitment (Not Guilty by Reason of Mental Disease or Defect).  *See* WIS. STAT. § 758.18 (providing that the Judicial Conference "shall adopt standard forms for use by parties and court officials in all civil and criminal actions and proceedings in the circuit court").

commitment period imposed on Yakich was within the court's authority under WIS. STAT. § 971.17(1), as we have interpreted similar language in a prior version of that statute in ***State v. C.A.J.***, 148 Wis. 2d 137, 434 N.W.2d 800 (Ct. App. 1988). Finally, we conclude that the subsequent amendments to § 971.17 have not abrogated ***C.A.J.***'s holding. Accordingly, we affirm.

## BACKGROUND

¶3 The State filed two criminal complaints against Yakich based on conduct that occurred in the summer of 2018. In Case No. 2018CF169, he was charged with one felony count of bail jumping and one misdemeanor count of unlawful telephone use. In Case No. 2018CF301, he was charged with two additional counts of felony bail jumping.[3] Yakich pleaded NGI to these four counts, the State did not contest his pleas, and the circuit court found him not guilty of all counts by reason of mental disease or defect.

¶4 During the circuit court proceedings, the parties disputed whether the commitment periods should run concurrently or consecutively. Yakich argued that the pertinent statutes do not authorize consecutive NGI commitments. The State countered that it is common for circuit courts to impose consecutive commitments when a defendant is found NGI of more than one crime.

¶5 The circuit court appeared to agree with the State. Using the standard form CR-271, it entered two separate commitment orders, one for each

---

[3] Yakich was also charged with the following additional misdemeanor counts in Case No. 2018CF301: bail jumping, telephone harassment, obstructing an officer, possession of THC, disorderly conduct, and possession of drug paraphernalia. The State dismissed these charges as part of plea negotiations, and we address them no further.

case. It ordered that Yakich be committed for two years in No. 2018CF169 and three years in No. 2018CF301. The form asked the court to indicate whether each commitment was "consecutive to any other [WIS. STAT. § 971.17] commitments," or whether it "commences on [a date certain] which is concurrent with any other [§ 971.17] commitments." On both orders, the court checked a box on the form, stating that the commitments would be "consecutive."

¶6      As a result of the court's orders, Yakich will be committed for a total of five years. This commitment period is longer than the maximum term of confinement in prison for any one of the crimes to which Yakich was found NGI.[4]

¶7      Yakich appealed both orders and we consolidated the appeals. He renews his argument that the circuit court did not have statutory authority to impose "consecutive terms of commitment," and he asks us to remand to the circuit court with instructions to amend the orders to reflect that his commitments are "concurrent."

### STANDARD OF REVIEW

¶8      When a circuit court commits a defendant who has been found not guilty by reason of mental disease or defect, "the court's authority is derived solely from statute." *State ex rel. Helmer v. Cullen*, 149 Wis. 2d 161, 164, 440 N.W.2d 790 (Ct. App. 1989). This case requires us to interpret the statutory grant

---

[4] *See* WIS. STAT. § 946.49(1)(b) (providing that the three bail-jumping charges are Class H felonies); WIS. STAT. § 973.01(2)(b)8. (providing that Class H felonies are subject to a "term of confinement in prison" that "may not exceed 3 years"); *see also* WIS. STAT. § 947.012(1) (providing that unlawful use of a telephone is a Class B misdemeanor); WIS. STAT. § 939.51(3)(b) (providing that the maximum "term of imprisonment" for a Class B misdemeanor is 90 days).

4

of authority. Statutory interpretation is a question of law that appellate courts review de novo. *Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852. When interpreting a statute, we begin with its plain language, *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110, and we also examine the history of the statute and the case law interpreting it, *Force ex rel. Welcenbach v. American Family Mut. Ins. Co.*, 2014 WI 82, ¶31, 356 Wis. 2d 582, 850 N.W.2d 866. A review of the history of the statute is part of a plain meaning analysis. *County of Dane v. LIRC*, 2009 WI 9, ¶27, 315 Wis. 2d 293, 759 N.W.2d 571.

## DISCUSSION

¶9 We begin by briefly summarizing the most relevant statutes. Although NGI proceedings are initiated through criminal prosecution, NGI commitments are not criminal sentences. *See State v. Harr*, 211 Wis. 2d 584, 587, 568 N.W.2d 307 (Ct. App. 1997). They are governed by separate statutes that specifically pertain to NGI proceedings and commitments. *See* WIS. STAT. §§ 971.15-971.17.

¶10 WISCONSIN STAT. § 971.17(1) is the statute that grants authority to commit defendants who have been found NGI. For ease of reference, we sometimes refer to § 971.17(1) as the "commitment statute." The current version of the commitment statute provides that the circuit court "shall commit the person

5

… for a specified period." *See* § 971.17(1)(b), (d).[5] It sets forth slightly different methods of calculating the commitment period, depending on whether the underlying crime is a felony or misdemeanor. *See generally* § 971.17(1). In both instances, however, the maximum commitment period is calculated by reference to the "maximum term" that "could be imposed on an offender convicted" of the same offense. *See* § 971.17(1)(b), (d).[6] As a result, the circuit court must refer to criminal sentencing statutes to determine how long a defendant's commitment can last, even though an NGI commitment is not itself a criminal sentence.

¶11 The commitment statute does not provide explicit instructions on how to proceed when a defendant has been found NGI of more than one crime. *See* WIS. STAT. § 971.17. This is in stark contrast to statutes that address other

---

[5] Two paragraphs of the commitment statute, WIS. STAT. § 971.17(1)(b) and (d), are implicated by the crimes at issue in this case: § 971.17(1)(b) governs the NGI commitment period for felonies committed on or after July 30, 2002, and § 971.17(1)(d) governs the NGI commitment period for misdemeanors. The commitment statute also has two additional paragraphs that are not implicated by the crimes at issue in this case: § 971.17(1)(a), which governs NGI commitment periods for felonies committed before July 30, 2002, and § 971.17(1)(c), which governs NGI commitment periods for felonies that are eligible for life in prison.

[6] WISCONSIN STAT. § 971.17(1)(b) refers to the "maximum term of *confinement in prison* that could be imposed on an offender convicted of the same *felony*." (Emphasis added.) By contrast, par. (1)(d) refers to two-thirds of the "maximum term of *imprisonment* that could be imposed against an offender convicted of the same *misdemeanor*." (Emphasis added.) The difference in language between these two paragraphs appears to be a reference to the difference in language in the separate statutes governing sentencing for felonies and misdemeanors. *See* WIS. STAT. § 973.01(2)(b) (setting forth maximum "terms of confinement in prison" applicable to felony offenses); WIS. STAT. § 939.51 (setting forth maximum penalties, including the maximum "term of imprisonment" for misdemeanor offenses).

Here, the maximum commitment period for Yakich's misdemeanor was quite short—just 60 days—and there is no indication that the circuit court extended Yakich's commitment to specifically account for the misdemeanor offense. Accordingly, for ease of reference throughout this opinion, we focus on the felony offenses and the phrase "maximum term of confinement in prison" found in the current version of the commitment statute when addressing the court's authority to specify the duration of an NGI commitment period.

criminal dispositions, and which provide explicit guidance to courts about their options for sentencing a defendant convicted of multiple criminal counts. Specifically, WIS. STAT. § 973.15(2)(a) provides circuit courts with authority to order that the sentences for multiple counts run concurrently or consecutively.[7] Accordingly, under § 973.15(2)(a), a criminal *sentence* may be made "concurrent with or consecutive to" any other *sentence*.

¶12    We have held that this language applies to sentences only, and not to other dispositions.[8]  When a defendant is found not guilty by reason of mental disease or defect, the resulting NGI commitment is not a "sentence," and WIS. STAT. § 973.15(2)(a) does not directly apply.  *Harr*, 211 Wis. 2d at 587 (holding that an NGI commitment cannot run consecutive to a prison sentence because the commitment is not a "sentence" as that word is used in § 973.15(2)).

¶13    Having briefly summarized the relevant statutes, we now turn to the issue on appeal.  For reasons that will become apparent below, we frame the issue somewhat differently than the parties have articulated it in their briefs.  We conclude that the issue is best stated as follows:  whether the circuit court had statutory authority to order a total commitment period that is longer than the maximum term of confinement in prison that could be imposed for any one of the crimes to which Yakich pleaded NGI. If Yakich is right, the answer is no.  If the

---

[7] *See also* WIS. STAT. § 973.09(1)(a), (2)(a)2., (2)(b)2. (providing that a probation period "may be made consecutive to a sentence on a different charge, whether imposed at the same time or previously," and that the length of a probation period may be increased based on other crimes for which the defendant is convicted "at the same time").

[8] *See, e.g.*, **State v. Wolfe**, 2001 WI App 136, ¶15, 246 Wis. 2d 233, 631 N.W.2d 240 (addressing juvenile dispositions); **State v. Gereaux**, 114 Wis. 2d 110, 113, 338 N.W.2d 118 (Ct. App. 1983) (addressing probation).

State is right, the only limit on the duration of a commitment period is that it can be no longer than the maximum term of confinement in prison that could be imposed on a defendant who was convicted of the same crimes and sentenced to consecutive maximum sentences for each crime under WIS. STAT. § 973.15(2)(a).

¶14    In the analysis that follows, we briefly summarize the parties' arguments. We then discuss *C.A.J.*, 148 Wis. 2d 137, a decision in which we interpreted a prior version of the commitment statute and concluded that the "maximum term of [an NGI] commitment" was equivalent to "maximum consecutive terms" of imprisonment for the same offenses. *Id.* at 138. Finally, we consider whether the subsequent amendments to the commitment statute demonstrate a legislative intent to abrogate the holding of *C.A.J.* For reasons we explain more fully below, we conclude that the issue on appeal has already been decided in *C.A.J.*, and that the subsequent amendments to the commitment statute have not abrogated its holding.

## I.  Summary of the Parties' Arguments

¶15    The parties frame their dispute as whether circuit courts have the statutory authority to impose "consecutive NGI commitments." Yakich contends that circuit courts do not. He argues that a court's authority to commit a defendant is derived solely from statute[9] and that there is no authority to impose consecutive commitments found in the commitment statute or any other statute. Yakich also points to the fact that in analogous situations, we have determined that the authority found in WIS. STAT. § 973.15(2)(a) to impose consecutive sentences

---

[9] *See* **State ex rel. Helmer v. Cullen**, 149 Wis. 2d 161, 164, 440 N.W.2d 790 (Ct. App. 1989).

does not extend to other dispositions, including probation and juvenile dispositions, because those dispositions are not "sentences."[10]

¶16    By way of example, in **State v. Gereaux**, 114 Wis. 2d 110, 338 N.W.2d 118 (Ct. App. 1983), the circuit court imposed two probation periods and ordered that they would be served consecutively. **Id.** at 111. On appeal, we determined that "probation" was "not a sentence." **Id.** at 113. We further determined that the statutory authority to impose consecutive sentences did not extend to allow consecutive periods of probation. **Id.** In the absence of statutory language specifying whether periods of probation should be concurrent or consecutive, we remanded the case to the circuit court, directing it to order that the two probation periods "run concurrently." **Id.** at 114. Yakich argues that we should reach the same result here for the same reason.

¶17    Conversely, the State argues that this issue has already been resolved in **C.A.J.**, 148 Wis. 2d 137. It acknowledges that the commitment statute does not expressly refer to the consecutive sentencing statute, WIS. STAT. § 973.15(2)(a), nor does it expressly provide that a court can order consecutive commitments. However, the State argues that the authority to order consecutive commitments is "implicit" in the text of the commitment statute, as recognized in **C.A.J.**

---

[10] *See* **Wolfe**, 246 Wis. 2d 233, ¶15 (concluding that WIS. STAT. § 973.15(2)(a) does not apply to juvenile dispositions, and that consecutive juvenile dispositions cannot be imposed); **State v. Schwebke**, 2001 WI App 99, ¶¶25-30, 242 Wis. 2d 585, 627 N.W.2d 213, *aff'd on other grounds*, 2002 WI 55, 253 Wis. 2d 1, 644 N.W.2d 666 (concluding that § 973.15(2)(a) does not apply to probation and that there is no statutory authority to impose consecutive probation terms); **State v. Woods**, 173 Wis. 2d 129, 137, 496 N.W.2d 144 (Ct. App. 1992) (concluding that a criminal sentence cannot be consecutive to a juvenile court disposition because there was no statutory authority to do so); **State v. Harr**, 211 Wis. 2d 584, 587-89, 568 N.W.2d 307 (Ct. App. 1997) (concluding that a criminal sentence cannot be consecutive to an NGI commitment because there was no statutory authorization to do so).

Specifically, the current version of the commitment statute uses the phrase "maximum term of confinement in prison that could be imposed on an offender convicted of the same felony," and the State contends that this language "implicitly refers to" § 973.15(2)(a), which authorizes consecutive sentences for criminal convictions. As a result of this "implicit" reference, the State argues that the commitment statute "therefore allows consecutive NGI commitments."

¶18 The parties also dispute whether the amendments to the commitment statute since *C.A.J.* have abrogated its holding. After considering these arguments and the statutory history, we ordered the parties to file supplemental briefs to answer specific questions about the post-*C.A.J.* amendments. We discuss these arguments in greater detail below.

## II. *State v. C.A.J.*

¶19 As with this case, *C.A.J.*, 148 Wis. 2d 137, was a consolidated appeal of two criminal cases. The defendant, C.A.J., had been found NGI on two counts, one that carried a maximum sentence of two years of imprisonment, and another that carried a maximum sentence of nine months of imprisonment. *Id.* at 138-39. C.A.J.'s commitment period had been calculated based on consecutive prison sentences—that is, the two maximum sentences were added together to equal a total commitment period of two years and nine months. *Id.* at 139. C.A.J. argued that the commitment period should have instead been calculated based on concurrent prison sentences, meaning that he could not have been committed for longer than two years. *Id.* at 139.

¶20 At the time we decided *C.A.J.*, the commitment statute was less complicated than its modern counterpart. It directed the circuit court to commit the defendant to the Department of Health and Social Services' custody until

10

discharged. WIS. STAT. § 971.17(1) (1987-88). The defendant would then be discharged from the Department's custody after the "maximum period for which a defendant could have been imprisoned if convicted of the offense charged" had elapsed. *See* § 971.17(4) (1987-88). Unlike the current version of the commitment statute, the version of the statute in effect when *C.A.J.* was decided did not give the court any discretion to specify a shorter commitment period. *See* ***Helmer***, 149 Wis. 2d at 164.

¶21 In considering whether the duration of C.A.J.'s commitment was proper, we focused on the statutory phrase "maximum period for which a defendant could have been imprisoned if convicted of the offense charged." ***C.A.J.***, 148 Wis. 2d at 139 (quoting WIS. STAT. § 971.17(4) (1987-88)). C.A.J. argued that this language "speaks only of a single offense," and therefore, the commitment statute did not allow a commitment period to be calculated based on consecutive terms. *Id.* We did not find that textual argument to be persuasive. *Id.* Because we generally interpret singular nouns to include the plural,[11] we construed the singular noun "offense" as also referring to "multiple offenses." *Id.* at 140.

¶22 We acknowledged that the statute's language did not "specifically indicate whether the maximum term of commitment" could be calculated "based on consecutive terms" of imprisonment in multiple offense situations. *Id.* at 139. However, we reasoned that the purpose of the statutory language was to ensure that persons found NGI would not be committed any longer than they could be imprisoned for the underlying offense. *Id.* at 140. We further reasoned that, if the

---

[11] *See* WIS. STAT. § 990.001 and 990.001(1) ("[i]n construing Wisconsin laws," generally, "[t]he singular includes the plural, and the plural includes the singular").

defendant had been convicted of multiple offenses, the sentencing court would have the discretion to impose consecutive terms of imprisonment under WIS. STAT. § 973.15(2). *Id.* We noted that in other statutes addressing competency proceedings, the legislature restricted commitment periods to "the maximum penalty for the single most serious offense," but the legislature placed no such restriction in the commitment statute. *Id.* (citing WIS. STAT. § 971.14 (1987-88)). Therefore, we interpreted WIS. STAT. § 971.17(4) (1987-88) as providing that a commitment period encompassing multiple criminal counts must be calculated by adding together the maximum terms of imprisonment for all of those counts. *Id.* at 141.

¶23 We pause to observe that, contrary to both parties' assertions, *C.A.J.* did not conclude that a circuit court can order "consecutive commitments." That is, we did not appear to contemplate that C.A.J. would be serving two commitment periods, each separately delineated and each served consecutively to the other. Instead, consistent with the statutory language, we contemplated that C.A.J. would be subjected to a single commitment period with a discharge date that was calculated based on how long C.A.J. could have been imprisoned—taking into account that a sentencing court would have authority to impose consecutive prison sentences.

¶24 This distinction is not trivial. We recognize that some subsequent guidance, including the standard form that the circuit court used to commit

Yakich, appears to have blurred the distinction.[12] Nevertheless, we conclude that the distinction is more than semantic, and that it is helpful to correctly understand the court's authority to determine the length of an NGI commitment under the current version of the commitment statute. This is why we have determined it appropriate to reframe the issue on appeal. *See supra*, ¶13.

### III. Whether C.A.J. Has Been Abrogated

¶25 Our case law may be abrogated by a subsequent statutory amendment. *See, e.g.*, ***State ex rel. Hensley v. Endicott***, 2001 WI 105, ¶13, 245 Wis. 2d 607, 629 N.W.2d 686. The parties agree that, if a subsequent statutory amendment has not abrogated ***C.A.J.***, the court had the authority to order that Yakich be committed for five years. However, the parties dispute whether subsequent amendments to the commitment statute have abrogated the holding of

---

[12] As discussed above, form CR-271 directs circuit courts to check a box indicating whether the commitment is "consecutive" or "concurrent" to any other WIS. STAT. § 971.17 commitments. Although the checkboxes are misleading for the reasons explained above, we recognize that they serve as a useful fiction, especially in situations where a defendant is found NGI in multiple cases at different times, perhaps even by different judges. The current version of the commitment statute gives courts authority to specify a commitment period that is shorter than the maximum confinement in prison for the same offenses, and in such cases, the "concurrent" and "consecutive" checkboxes serve as familiar if not entirely accurate shorthand, allowing the court to express its intent.

For the sake of completeness, we observe that other aspects of form CR-271 could be revised for further clarity. Specifically, the form directs the court to calculate the "maximum term of imprisonment" for any misdemeanor or felony. Yet, a court would err if it imposed a commitment period equal to the maximum term of imprisonment for any offense. Under the commitment statute, maximum commitment periods are significantly shorter than the maximum terms of imprisonment—the maximum "term of confinement in prison that could be imposed" for any felony and two-thirds of the maximum "term of imprisonment" that could be calculated for any misdemeanor. WIS. STAT. § 971.17(1)(b), (d). Yet, following the standard form, it would be easy for a court to miss this nuance and impose a commitment period that exceeds the permissible duration. *See, e.g.*, ***State v. Fugere***, 2019 WI 33, ¶50, 386 Wis. 2d 76, 924 N.W.2d 469 (noting that it was "undisputed" that the circuit court erred when it informed the defendant that his maximum NGI commitment period was the period stated in the maximum penalty statute).

*C.A.J.* Accordingly, we examine the language used in the current version of the commitment statute, as well as the history of significant amendments to that statute since *C.A.J.* was decided.

## A. The Current Statute

¶26 Our supreme court has explained that "[l]egislative inaction following judicial construction of a statute, while not conclusive, evinces legislative approval of the interpretation." *State v. Sanders*, 2018 WI 51, ¶52, 381 Wis. 2d 522, 912 N.W.2d 16 (citation omitted). This is especially true "when other provisions within the same section are amended without affecting the provision at issue." *Id.* Although some portions of the commitment statute have been significantly changed since *C.A.J.* was decided in 1988, the specific language that *C.A.J.* relied upon is very similar to the language in the current statute.

¶27 As mentioned above, at the time *C.A.J.* was decided, the commitment statute did not distinguish between types of offenses—it instead addressed all criminal offenses in a single section. The specific language upon which *C.A.J.* relied was the "*maximum period* for which a defendant *could have been imprisoned* if convicted of the *offense charged* ...." WIS. STAT. § 971.17(4) (1987-88) (emphasis added). The commitment statute now distinguishes between felonies and misdemeanors, and for felonies, it refers to "the *maximum term* of *confinement in prison* that *could be imposed* on an offender convicted of the *same felony* ...." Section 971.17(1)(b) (emphasis added).

¶28 Standing alone, the legislature's decision to change "maximum period" to "maximum term" does not demonstrate an intent to abrogate *C.A.J.*—the two phrases appear to be synonymous. Neither does the legislature's decision

14

to change "could have been imprisoned" to "confinement in prison that could have been imposed" (as it pertains to felonies). Nor does the decision to replace the word "crime" with "felony." None of these amendments abrogated the principle that a maximum commitment term is calculated by reference to the maximum length of time that a defendant could be sent to prison under consecutive sentences for the charged crimes.

¶29　Accordingly, the plain language of the current statute does not abrogate *C.A.J.* Additionally, the reasoning we used in *C.A.J.* applies equally well to the language of the current statute.

## B. The Statutory History of WIS. STAT. § 971.17

¶30　We now turn to the statutory history. For our purposes, there were two acts that significantly amended the commitment statute since *C.A.J.* was decided. The first occurred in 1989, the year following *C.A.J.* *See* 1989 Wis. Act 334 (which we sometimes refer to as the "1989 Act"). The second occurred in 2001, and it is part of a package of legislation that is commonly known as Truth-in-Sentencing II (TIS-II). *See* 2001 Wis. Act. 109 (which we sometimes refer to as the "2001 Act"). We examine each act in turn and, for the reasons discussed below, we conclude that neither abrogated *C.A.J.*'s holding.

*1989 Wis. Act 334*

¶31　The 1989 Act repealed and recreated the commitment statute as part of an overhaul of all of the statutes governing the NGI defense. The legislation

15

was initially drafted by the Judicial Council Insanity Defense Committee, which kept detailed minutes of its proceedings.[13]

¶32    For our purposes, the 1989 Act made three significant changes to WIS. STAT. § 971.17.  First, it specified that the maximum commitment period was two-thirds of the maximum term of imprisonment for the same crime or crimes.  *See* 1989 Wis. Act 334 § 5.[14]  Second, the 1989 Act introduced the concept of a specified "commitment period" that would be ordered by the circuit court at the time the defendant was committed, and gave the court discretion to impose a commitment period that was shorter than the maximum.  *See id.*[15]  Third, and most significant to the issue in this case, the 1989 Act specifically added a reference to the consecutive sentencing statute, WIS. STAT. § 973.15(2).  *See id.*  As amended by the 1989 Act, the commitment statute provided that, "[w]hen a defendant is found [NGI], the court shall commit the person … for a specified period not exceeding two-thirds of the maximum term of imprisonment that could be imposed *under s. 973.15(2)* against an offender convicted of the same *crime or*

---

[13]   The committee minutes reflect that one major concern motivating the overhaul of the NGI statutes was that defense attorneys had become reluctant to assert an NGI defense, especially in prosecutions for minor crimes.  Wisconsin Jud. Council Insanity Def. Comm. Minutes, Doc. 71 at 7 (1989) (on file with the Wisconsin State Law Library).  This issue arose because persons found NGI were automatically committed to an institution, presumptively for the maximum term, and without any option for supervision in the community.  *Id.*, Doc. 74 at 6-7, Doc. 78 at 5.  In other words, a defendant who pleaded NGI was likely to spend significantly more time in an institution than someone who pleaded guilty to the same offense would spend in prison.

[14]   This change appears to have been made to account for the fact that, at the time, most incarcerated individuals were subject to a mandatory release date after two-thirds of their sentences had been served.  *See* WIS. STAT. § 302.11(1) (1989-90).

[15]   As stated above, prior to this amendment, the circuit court committed the defendant to the Department's custody, and it was up to the Department to calculate the release date.  WIS. STAT. § 971.17(4) (1987-88).  Additionally, we had previously held that circuit courts did not have authority to specify a commitment period shorter than the maximum term of imprisonment that could be imposed for the same offense.  *See Helmer*, 149 Wis. 2d 161.

*crimes*, including" various penalty enhancers, and "subject to" sentence credit. WIS. STAT. § 971.17(1) (1989-90) (emphasis added).

¶33    The parties agree that the emphasized language was added to codify *C.A.J.*'s holding. They further agree that, if the emphasized language were still found in the commitment statute, there could be no doubt that the court had the authority to impose the commitment period that it imposed. However, as discussed in greater detail below, the emphasized language was stricken when the legislature enacted 2001 Wis. Act 109.

*2001 Wis. Act 109*

¶34    As noted above, the amendments that the 2001 Act made to the commitment statute were part of a comprehensive package of legislation commonly referred to as Truth-in-Sentencing II (TIS-II). By way of background, the legislature had significantly changed Wisconsin's felony sentencing regime several years before when it enacted Truth-in-Sentencing I (TIS-I). *See* 1997 Wis. Act 283; *see also* **State v. Jackson**, 2004 WI 29, ¶2 n.2, 270 Wis. 2d 113, 676 N.W.2d 872 (describing Wisconsin's two-phased adoption of Truth-in-Sentencing). At least some of the changes in the 2001 Act appear to be an attempt to conform the NGI commitment regime to the new sentencing regime for felonies.[16] Specifically, the 2001 Act set forth different methods of calculating an NGI commitment period, depending on whether the underlying crime was a felony

---

[16] *See, e.g.*, Michael B Brennan et al., *Fully Implementing Truth-in-Sentencing*, Wisconsin Lawyer (Nov. 2002), *available at* https://www.wisbar.org/NewsPublications/ WisconsinLawyer/Pages/Article.aspx?Volume=75&Issue=11&ArticleID=259.

or misdemeanor, and if a felony, whether the crime was committed before or after TIS-II's effective date. *See* 2001 Wis. Act 109 §§ 1106-08.

¶35 Most important for our purposes, the legislature struck all references in the commitment statute to WIS. STAT. § 973.15(2)(a). It removed the reference to § 973.15(2)(a) in WIS. STAT. § 971.17(1)(a), which it amended to specifically address the maximum commitment period of persons found NGI of any felony that was committed before TIS-II's effective date.[17] And when the legislature created new subsections addressing the maximum commitment period for persons found NGI of any misdemeanor or felony committed after TIS-II's effective date, it did not include any reference to § 973.15(2)(a).[18]

---

[17] That provision was amended to read (with added language underscored and omitted language stricken):

> (1)(a*) Felonies committed before the effective date of this paragraph .... [revisor inserts date].* ~~When~~ Except as provided in par. (c), when a defendant is found not guilty by reason of mental disease or mental defect of a felony committed before the effective date of this paragraph .... [revisor inserts date], the court shall commit the person to the department of health and family services for a specified period not exceeding two-thirds of the maximum term of imprisonment that could be imposed ~~under s. 973.15 (2) (a)~~ against an offender convicted of the same ~~crime or crimes~~ felony, including imprisonment authorized by ~~ss. 346.65 (2) (f), (2j) (d) or (3m), 939.62, 939.621, 939.63, 939.635, 939.64, 939.641, 939.645, 940.09 (1b), 940.25 (1b) and 961.48 and other~~ any applicable penalty enhancement statutes, ~~as applicable,~~ subject to the credit provisions of s. 973.155.

2001 Wis. Act 109, § 1106.

[18] In its entirety, the newly amended statute provided:

> **(1)** COMMITMENT PERIOD.
>
> **(a)** *Felonies committed before July 30, 2002.* Except as provided in par. (c), when a defendant is found not guilty by

(continued)

18

¶36 The parties dispute why the legislature omitted the reference to § 973.15(2) when it passed the 2001 Act. Yakich argues that, although there is no specific explanation in the drafting files, the omission by the legislature was

> reason of mental disease or mental defect of a felony committed before July 30, 2002, the court shall commit the person to the department of health and family services for a specified period not exceeding two-thirds of the maximum term of imprisonment that could be imposed against an offender convicted of the same felony, including imprisonment authorized by any applicable penalty enhancement statutes, subject to the credit provisions of s. 973.155.
>
> **(b)** *Felonies committed on or after July 30, 2002.* Except as provided in par. (c), when a defendant is found not guilty by reason of mental disease or mental defect of a felony committed on or after July 30, 2002, the court shall commit the person to the department of health and family services for a specified period not exceeding the maximum term of confinement in prison that could be imposed on an offender convicted of the same felony, plus imprisonment authorized by any applicable penalty enhancement statutes, subject to the credit provisions of s. 973.155.
>
> **(c)** *Felonies punishable by life imprisonment.* If a defendant is found not guilty by reason of mental disease or mental defect of a felony that is punishable by life imprisonment, the commitment period specified by the court may be life, subject to termination under sub. (5).
>
> **(d)** *Misdemeanors.* When a defendant is found not guilty by reason of mental disease or mental defect of a misdemeanor, the court shall commit the person to the department of health and family services for a specified period not exceeding two-thirds of the maximum term of imprisonment that could be imposed against an offender convicted of the same misdemeanor, including imprisonment authorized by any applicable penalty enhancement statutes, subject to the credit provisions of s. 973.155.

WIS. STAT. § 971.17(1) (2001-02). The commitment statute has not been amended since, except that references to the department of health and family services have been changed to reflect that agency's current name, the department of health services. *See* 2007 Wis. Act 20, § 9121(6).

19

deliberate. He contends that the most persuasive explanation is that the legislature intended to abrogate *C.A.J.* and remove the court's authority to impose "consecutive NGI commitments."

¶37 The State disagrees. According to the State, when the legislature removes language from a statute, "it does not necessarily signal that it intends to enact the opposite of that language." The State cites ***Richland Sch. Dist. v. DILHR***, 174 Wis. 2d 878, 896 n.8, 498 N.W.2d 826 (1993) for the proposition that it is "equally and likely reasonable" that the language was removed because it was "unnecessary." The State argues that the reference to WIS. STAT. § 973.15(2)(a) was "unnecessary" because the relevant language of the amended commitment statute was "identical in substance" to the language that *C.A.J.* had interpreted as implicitly referring to § 973.15(2).

¶38 After reviewing the statutory history and considering the parties' arguments, we agree with the State that there is no indication that the legislature intended to abrogate *C.A.J.* when it passed the 2001 Act. If the legislature intended to change the substantive law as Yakich contends, it seems unlikely that the legislature would have removed the reference to WIS. STAT. § 973.15(2)(a) in WIS. STAT. § 971.17(1)(a), which addresses felonies that occurred before the effective date of the 2001 Act. The more likely explanation is that the legislature was attempting to simplify an already complex statute by omitting cross-references that were deemed unnecessary. And we note that, consistent with this explanation, the 2001 Act did remove a number of such cross-references, as demonstrated above in note 17.

¶39 For all of these reasons, we conclude that the post-*C.A.J.* amendments to WIS. STAT. § 971.17 have not abrogated the holding of that case.

## CONCLUSION

¶40     In sum, we conclude that the circuit court had statutory authority to commit Yakich for a total period of five years after finding him not guilty by reason of mental disease or defect with regard to the four offenses charged in Case Nos. 2018CF169 and 2018CF301. Accordingly, we affirm the circuit court.

*By the Court.*—Orders affirmed.

Not recommended for publication in the official reports.